UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-342(1) (ECT/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANT'S POSITION** |
| v. ) | **PAPER** |
| ) | |
| DIONDRE MAURICE OTTO ) | |
| STATELY, ) | |
| Defendant. ) | |

**INTRODUCTION**

Diondre Stately is a 20-year-old Native American from Red Lake. He was barely 18 years old when he committed this offense (larceny) over two years ago. He has since then turned his life around, remained law-abiding, completed an intense life changing treatment program, started working full time for the first time in his life, and made a lifetime commitment to sobriety and pursuing life without drug use or alcohol. This has been a transformative experience for this young man, and he should be commended for his successful efforts in this regard.

A sentence of probation (or time served and placement on immediate supervised release) is an appropriate outcome in this case. The guidelines are 0-6 months, and the government is expected to concur with this recommendation given Mr. Stately's demonstrated rehabilitation and continued compliance with the terms of his release. Indeed, Mr. Stately is remorseful for this crime and has fully accepted responsibility for his conduct, as demonstrated by his significant post-offense rehabilitation. A sentence of

1

imprisonment would be "greater than necessary" to satisfy the purposes of sentencing, therefore a sentence of probation/time served which emphasizes and supports Mr. Stately's positive rehabilitation and keeps him in the community is appropriate sentencing outcome in this case. Accordingly, a sentence of probation/time served and continued adherence to his current regimen of sobriety, employment, and lawful living is a sentence that is "sufficient, but not greater than necessary" and is requested in this case.

## FACTUAL BACKGROUND

Diondre Stately is 20 years old. Mr. Stately was born into unfortunate circumstances, to say the least. His father was never involved in his life, he has had no relationship with him or any other father figure in his life. His mother died when she was only 27, after being hit by a car on the reservation; Diondre was only five years old. Although raised by loving and caring grandparents and his great-grandmother, this was a difficult substitute for having one's own parents around and involved in their child's upbringing. Mr. Stately's upbringing was compounded and impacted by seemingly constant death around him with the passing of other close relatives and friends over the years. He also suffers from ADHD, as well as depression and an anxiety disorder. All of these complicating variables came into play early on, and Mr. Stately turned to drugs and alcohol as an outlet and source of comfort at an early age. He has been a hardcore drinker and alcoholic since he was twelve, and his rather young life has largely consisted of getting drunk, fighting, and causing minor disturbances throughout his rambunctious teenage years. However, until this offense, he has avoided serious legal problems and criminal behavior.

2

Not surprisingly, this offense occurred while Mr. Stately was intoxicated. During the evening of September 21, 2019, Mr. Stately received a phone call from his sister (aunt), co-defendant Shalaina Stately, who was crying and upset over a situation she found herself in with GW, an acquaintance that she had gone to a casino with that evening. She complained that he was not treating her right, and she was upset over her share of the casino winnings. Quite frankly, when Diondre received her call, he was already well on his way to being quite drunk, and he had difficulty discerning what the situation was and what she wanted. Via phone call/text, she told him to meet her over at their house (they both resided at their grandmother's house in Red Lake). It was after midnight, and Diondre walked to the house (he was elsewhere), and there was a group of other acquaintances already gathered outside that evening. When GW's car pulled up, Shalaina got out, crying and upset and yelling about GW. Impulsively, Diondre got into the passenger seat, punched GW once in the face and got out of the car. Simultaneously (the sequence isn't clear) another individual, a juvenile not charged in this case, came up to the driver's side door, clubbed GW in the face with what has been described but not established to be a gun, and, grabbed GW's wallet. GW drove off, and in the aftermath, Diondre pocketed $200 from the proceeds, and left.

Much of the details are unclear and blurry to Mr. Stately, as he was quite drunk by the time this all happened; although he did not take the wallet, he did punch GW once in the face and wound up with $200 stolen from GW. Diondre then left the area on foot, and an hour or so later, he was accosted by another group of young males, and was himself badly assaulted, (it is not entirely clear why he was beaten up in the middle of the

3

night by this other group) and left on the ground. He eventually stumbled to a neighbor's door, and cried out for help, and the homeowner called the police, the police arrived, and Diondre was arrested for being drunk and disorderly.

A few days later, while in the Red Lake jail, Mr. Stately was questioned by law enforcement, and told the truth about what he remembered of the evening's events. He was then charged in tribal court with assault, robbery, and theft, and eventually pled guilty (November 2019), and was sentenced to a year in the Red Lake jail. He was subsequently indicted and charged in federal court for the same offense in January 2021. While he was initially released from federal custody to the halfway house in Fargo, he got into trouble there for his continued drug use, and eventually wound up back in the Red Lake jail, where he served out his year long sentence (8 months with tribal good time credit), was released and promptly got into trouble for being drunk and disorderly, and was then returned to federal custody. In October 2021, with assistance from Red Lake Chemical Health, Mr. Stately obtained placement at the Juel Fairbanks Residential Treatment Center in St. Paul, and was released to that facility and started long-term treatment there on November 10, 2021. The results have been miraculous.

After a somewhat difficult start, Mr. Stately embraced the treatment program, and turned his life around. The difficulties he had to overcome, given his upbringing and previous history, cannot be understated. This was difficult. However, Mr. Stately now has been clean and sober for over a year (year and half), has learned tools necessary to deal with his problems, and has a sober support group in place. This has been the longest and only real period of sobriety since he started drinking when he was twelve, and he

now has goals, purpose, and a future. He also has started working full-time for the first time in his life, initially working at Domino's Pizza, and now is working full time at a Culver's in St. Paul. Mr. Stately just recently moved out of the treatment center and is renting a room in a house with other sober individuals. He plans on staying sober, and does not plan on returning to Red Lake. He has made the right choices and turned an important corner in his life, and his trajectory is good. He is on the right path. He should be commended and supported in his efforts.

Concerning his involvement in this crime and his plans for the future, Mr. Stately provided the following insights as noted in the PSR:

> I am guilty of larceny/theft as charged in the information and I regret that I did this. Not to make excuses, but I was drinking heavily that evening when my sister [i.e., biological aunt] contacted me and I met up with them outside the house and assisted with taking G.W.'s money. I am sorry that I did that, and sorry that I hit him. Shortly after that, I was assaulted by another group of men and wound up in the Red Lake Jail, drunk, beaten, and in trouble again. I am very grateful that I was able to get to Juel Fairbanks for treatment, this has really saved me and helped turn my life around and given me hope, purpose and a future. Something I never really had before. I plan on working, getting a place to live with other sober people, getting my GED, and staying away from Red Lake and staying out of trouble in the future. I don't want to ever go back to the life I had before I got straight and sober.

Diondre Stately (PSR Par. 15).

Now he faces sentencing for this serious federal offense.

### §3553(a) DISCUSSION

While the court is required to calculate the guidelines, those guidelines are only advisory and the guidelines are not entitled to a presumption of reasonableness. "The Guidelines are not only ***not mandatory*** on sentencing courts; **they are also not to be**

*presumed* **reasonable**." *Nelson v. United States,* 129 S.Ct. 890, 894 (2009) (emphasis added). Even in pre-guidelines practice, the fact that the sentencing guideline calculations were determined to be arithmetically accurate, however, still did not mean that they constituted an appropriate, reasonable, and just sentence in any case. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). The Supreme Court has ruled emphatically that the guideline sentence is not to be presumed reasonable in any individual case and that the Court "must make an **individualized assessment** based on the facts presented" in each case. *Gall v. United States*, 128 S.C. 586, 602 (2007).

In *Booker*, the United States Supreme Court held that the United States Sentencing Guidelines are advisory, and that District Courts must examine all factors set forth in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient but not greater than necessary" to accomplish the goals of sentencing. *United States v. Booker*, 543 U.S. 220 (2005). The triad of 2007 Supreme Court decisions made clear that Federal Courts must determine sentences based on the facts and unique circumstances of the particular case, and that the guidelines do not enjoy a presumption of reasonableness. *Gall v. United States,* 128 S.C. 586, 602 (2007) (finding a probationary sentence, substantially outside of the guidelines, to be reasonable); *Kimbrough v. United States*, 128 S.C. 558, 570 (2007) (noting that Courts may vary from guidelines ranges based solely on policy considerations, including disagreements with the guidelines); *Rita v. United States*, 127

6

S.C. 2456, 2465 (2007) (holding that a District Court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations"). These decisions "mean that the District Court is free to make its own reasonable application of the §3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.C. at 577 (Scalia, J., concurring). The "truly advisory" holding of these cases was made abundantly clear by Justice Stevens: "I trust that those judges who had treated the Guidelines as virtually mandatory during the post-Booker interregnum will now recognize that the **Guidelines are truly advisory."** *Rita*, 127 S.Ct. at 2474 (J. Stevens, concurring) (emphasis added). As a result of these decisions, "the range of choice in sentencing dictated by the facts of the case has been significantly broadened." *United States v. Goodman*, 2008 WL 1766759 at 5 (D.Neb. 2008).

While in practice, a District Court still must calculate the advisory Guidelines range, *Gall*, 128 S.C. at 596-97, the Court must then:

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [they] may not presume that the Guidelines range is reasonable. [They] must make an **individualized assessment** based on the facts presented.

Id. (citation and footnote omitted)(emphasis added).

Moreover, in its decision in *Pepper v. United States*, 131 S.Ct. 1229 (2011), the court reaffirmed the almost indisputable notion that rehabilitation is an extremely important sentencing factor for any court to consider. While *Pepper* dealt with post-sentencing rehabilitation, the underlying principle of taking rehabilitation into account in

7

any sentencing is solidly at the core of any sentencing decision. In the context of Mr. Stately's case, the court has the experience that in the over two years since he involved himself in this offense, he has squarely addressed his alcohol/drug addiction, sought help to correct his behavioral and personal faults, gained control over his life, and accepted responsibility for his crime. In short, the progress he has made to correct his behavior and his demonstrated rehabilitation are exactly the kind of "individual characteristics" that the Supreme Court has advised should be given significant consideration in this court's sentencing decision.

Indeed, probation is a satisfactory and salutary outcome in many deserving cases. Incarceration is simply not necessary in every case, indeed, in some instances, it may be counterproductive, and it certainly should not be valued as an outcome in any given case. A sentence of probation is an appropriate sentence for this 20-year-old first time offender, and Diondre Stately is someone who is certainly deserving of a second chance. Indeed, probation is widely recognized as an appropriate alternative to imprisonment, it is approved by statute, and the courts have for years recognized the beneficial purposes of probationary sentences.

Mr. Gall's case illustrates the extent that a court may vary from the guidelines and impose a probationary sentence based on reasonable factors. In *Gall*, the Supreme Court confirmed that a sentencing court within this circuit was well within its discretion to give a probationary sentence to a drug conspirator with a 30 – 37 month guidelines range. 552 U.S. at 57-59. A sentence of probation for Gall was based in part on Mr. Gall's limited role in the conspiracy, his minor criminal past, and his immaturity, and was done in spite

of prison sentences imposed for Mr. Gall's similarly situated coconspirators. *Id.* at 43-44. Moreover, probation is not a pass on punishment. As stated in *Gall*, offenders on probation or supervised release are subject "to several standard conditions that substantially restrict their liberty." 128 S.Ct. at 595. As stated by the district court in *Gall*:

> Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life.

*Gall*, 128 S.Ct. at 593. *Id*.

In the aftermath of *Gall* and *Booker*, District Courts have taken to heart the Supreme Court's dictate "to impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing" in §3553(a). *Rita v. United States,* 127 S.Ct. 2356, 2463 (2007). Further incarceration is simply not necessary in this case. Mr. Stately has already served a year in tribal court custody for this same offense, and he has learned his lesson. His rehabilitation, youth, lack of prior record, and disadvantaged background are all-important individual characteristics, which upon application of the 3553(a) factors, warrant a sentence of probation. Moreover, sending Mr. Stately to prison would be "counter effective." Mr. Stately has never been deeply entrenched in criminal conduct, he is not a psychopath or sociopath, and has never been involved in sophisticated criminal activity. In short, if he stays on his current path and remains straight and sober, there will be no further problems from this young man.

In conclusion, Diondre Stately is well on his way to recovery and turning his life around. The law enforcement purposes of sentencing are more than satisfied by a probationary sentence in this case – including promoting respect for the law, and providing deterrence to others – while taking into account the individual characteristics of Mr. Stately.  As Judge Rakoff has observed, there is a fundamental reason that courts are asked to review the entire circumstances of a person's life in determining an appropriate sentence: "[I]n determining the appropriate punishment here, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his future hangs in the balance.  This elementary principle of weighing the good with the bad, which is basic to all great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'" *United States v. Adelman*, 441 F. Supp.2d 506, 513-514 (S.D.N.Y. 2006).

A sentence of probation (or time served and placement on immediate supervised release), with appropriate conditions, is an appropriate sentence in this case.  It is so requested.

Dated:   December 14, 2021				Respectfully submitted,

*s/ Douglas Olson*

Douglas Olson
Attorney ID No.  169067
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415